UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL NO. 17-181-JTM-DEK |
|---|---|---|
| VERSUS | * | SECTION: "H" |
| CHAD ALLEN SCOTT | * | |
| | * | |

\* \* \*

**GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EXTRINSIC EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

**NOW INTO COURT** comes the United States of America, appearing through the undersigned Trial Attorneys, and respectfully submits this Notice of Intent to Introduce Extrinsic Evidence Pursuant to Federal Rule of Evidence 404(b). As described in detail below, the Government's proposed 404(b) evidence is admissible against Defendant for a variety of permitted purposes, including to show motive, knowledge, plan, preparation, intent, and absence of mistake.[1] Accordingly, the Government hereby gives notice of its intent to use this evidence, provides a summary of the evidence, and explains the purposes for which the evidence will be used at trial.

**Case background**

Defendant is under indictment in the Eastern District of Louisiana on charges relating to theft, perjury, obstruction of justice, and corruption. He was first indicted in September 2017. Rec. Doc. 1. Thereafter, in May 2018, a Superseding Indictment was filed, adding two new, related counts and increasing the total number of criminal charges against Defendant to eleven.[2] Rec. Doc. 71.

---

[1] The Government does not intend to introduce any 404(b) evidence as against co-defendant Rodney P. Gemar. All of the evidence discussed in this Notice pertains to Defendant Chad Allen Scott exclusively.

[2] Three additional counts pertain only to co-defendant Gemar.

As relevant to the present motion, Counts 1 and 2 of the Superseding Indictment allege falsification of government records. These charges relate to Defendant's scheme to make false statements on Drug Enforcement Administration ("DEA") paperwork in order to obtain a pickup truck that was purchased for him by a cooperator named Frederick Brown. Rec. Doc. 71, at 1-3. At the time, Mr. Brown was a drug dealer who provided relevant investigative information to Defendant. Defendant never formalized Mr. Brown as a DEA confidential informant and routinely violated DEA policy in his handling of Mr. Brown.

Counts 3 through 7 allege obstruction of justice and perjury. Rec. Doc. 71, at 3-10. These charges arise from Defendant's efforts to induce Mr. Brown and another cooperator named Edwin Martinez to perjure themselves at a criminal trial. Specifically, Defendant had Mr. Brown and Mr. Martinez falsely state that Mr. Brown met the trial defendant during a drug deal, when in fact this never happened. Defendant provided perjured testimony on this point as well.

In Counts 8, 9, and 10, Defendant is charged with conspiring to convert and remove mishandled evidence, converting evidence to his own use, and removing evidence from DEA's offices in New Orleans to prevent this evidence from being discovered by investigators. Rec. Doc. 71, at 14-15. The removed evidence was seized by Defendant and certain of his colleagues, and Defendant's handling of this evidence directly violated established DEA policy.

Count 11 charges Defendant with soliciting a sum of money from a cooperator named Jabar Watson. Rec. Doc. 71, at 15-16. As with Mr. Brown, Defendant did not follow DEA policy in his management of Mr. Watson, and Defendant regularly circumvented DEA policy in his meetings with Mr. Watson.

**Factual overview of the 404(b) evidence**

The extrinsic evidence to be introduced against Defendant relates to three distinct events.

First, the Government seeks to admit evidence stemming from a 1999 arrest and detention, in which Defendant mishandled evidence and made false statements in an official investigation. Second, extrinsic evidence will be introduced to show that Defendant was counseled twice in 2004 for failing to follow DEA policies in his management of confidential informants. Third, evidence indicates that Defendant induced a cooperating defendant make an untrue statement falsely implicating another individual in a drug crime. These incidents are each described in more detail below.

1. *Arrest and detention of Rap-A-Lot employees and subsequent investigation*

In 1999, while working as a DEA Special Agent in Houston, Defendant participated in a questionable traffic stop, arrest, and detention of employees of Rap-A-Lot Records, a Houston-based music label. Evidence indicates that in connection with this incident, Defendant mishandled evidence, in violation of DEA protocol. Evidence further shows that in an investigation into the incident, Defendant made false statements to investigators from the DEA's Office of Professional Responsibility ("DEA OPR").

In concert with certain other law enforcement officers from DEA and the Houston Police Department, Defendant orchestrated a late-night traffic stop of a van occupied by three Rap-A-Lot employees. Two of these employees—Christopher Simon and Aaron Toran—assert that they were victims of Defendant's official misconduct during this incident. According to them, once the van was pulled over, Defendant and certain other officers proceeded to remove the occupants from the vehicle, place them in handcuffs, and stand them against a wall. Evidence indicates that Defendant struck Mr. Simon and took a necklace from him.

Messrs. Simon and Toran will state that after the traffic stop, they were transported to an official facility where Defendant and at least one other DEA employee tried to coerce them to

3

divulge information about crimes. Thereafter, they were transported to a county jail where they were held for several hours before being released without being charged.[3]

Mr. Simon, who had his necklace taken by Defendant during the incident, will state that the necklace was not returned to him at the time of his release. Rather, Defendant kept the necklace in his evidence locker for several months.

DEA OPR subsequently investigated the circumstances of this arrest.[4] While the report found that there was insufficient evidence to support the allegations of civil rights abuses against Defendant, it did make clear that Defendant had mishandled the necklace he took from Mr. Simon. Indeed, Defendant admitted to investigators that he was aware of DEA evidence policies and did not follow them when handling Mr. Simon's necklace.

Further, evidence indicates that Defendant misled investigators about the circumstances under which he obtained the necklace. Defendant told investigators that he found the necklace in the interview room after meeting with Mr. Simon, and that he picked it up for safekeeping until he could return it to its owner. Mr. Simon states that this is entirely false. Rather, according to Mr. Simon, Defendant took the necklace while Mr. Simon was in handcuffs on the roadside. Mr. Simon will also state that he was not wearing this necklace in the interview room, as it was taken from him before he arrived at the facility. In fact, Mr. Simon will state that Defendant wore the necklace himself for a period of time that night. Mr. Simon's description of the facts at issue is corroborated by Mr. Toran.

Additionally, Defendant said to investigators that he repeatedly tried to contact Mr. Simon through his attorney to return the necklace, but Mr. Simon was unresponsive. Mr. Simon states

---

[3] As mentioned below, in spite of the statements of Messrs. Simon and Toran, an investigation concluded that the evidence was insufficient to prove the allegations of civil rights violations and illegal search and seizure that were leveled against Defendant.

[4] Pertinent excerpts from this DEA OPR investigation will be filed separately under seal.

4

that this is also false, and he notes that Defendant made no effort to contact him. According to Mr. Simon, the necklace was returned to him long after the arrest, but he never spoke to Defendant about it after the night of the incident.

    *2. Administrative counseling regarding the misuse of confidential informants*

As a separate matter, Defendant was reprimanded twice in 2004 for not following proper procedures when handling confidential informants.[5] In February of that year, Defendant was formally admonished by a DEA supervisor for failing to follow binding policy and procedure in his use of confidential informants. Defendant was also directed to adhere to DEA requirements in his future handling of informants. In June 2004, Defendant was reprimanded again for neglecting to manage his informants properly.

    *3. Soliciting false statements from a cooperating individual*

Defendant arrested a man named Julius Cerdes in late 2005. According to Mr. Cerdes, after his arrest, he attempted to cooperate with law enforcement. At that time, Defendant asked Mr. Cerdes to fabricate a story about another criminal defendant. Specifically, Defendant wanted Mr. Cerdes to say that Mr. Cerdes sold cocaine to the criminal defendant, when in fact this had not occurred. In exchange, Mr. Cerdes was to receive a more favorable disposition of his criminal case. In a subsequent proffer session, Mr. Cerdes lied as instructed, telling the false story conjured up by Defendant.

**Legal background**

Evidence of extrinsic acts is admissible under Federal Rule of Evidence 404(b) if the extrinsic evidence "is relevant to an issue other than the defendant's character" and if it "possess[es] probative value that is not substantially outweighed by its undue prejudice." *United*

---

[5] Excerpts from the relevant administrative documents will be filed separately under seal.

*States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978). Such evidence can be used for a broad variety of purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).

"[A] court may admit evidence of another wrong or act when it is relevant to any issue in the trial other than the defendant's criminal disposition." *United States v. Thomas*, 791 F.3d 889, 894 (8th Cir. 2015). Accordingly, "to avoid the strictures of Rule 404(b), all the government need do is suggest a logical hypothesis of the relevance of the evidence for a purpose other than to demonstrate his propensity to act in a particular manner." *United States v. Krout*, 66 F.3d 1420, 1431 (5th Cir. 1995).

**Purposes for which the 404(b) evidence will be introduced**

*1. Evidence related to the Rap-A-Lot incident is relevant to establish Defendant's motive, intent, knowledge, and lack of mistake.*

The 1999 arrest of the Rap-A-Lot employees gives rise to two separate 404(b) issues: one related to Defendant's mishandling of evidence; the second pertaining to Defendant's lying during the course of a federal proceeding. These two issues will be addressed individually.

    a. <u>Defendant's acknowledgment that he mishandled evidence is relevant to establish his motive, intent, knowledge, and lack of mistake.</u>

As described above, Defendant admitted to DEA OPR investigators that he did not follow DEA evidence protocol in his handling of Mr. Simon's necklace. He further indicated that he understood DEA's non-drug evidence policies. This evidence is relevant to proving Defendant's knowledge, intent, and motive in Counts 8, 9, and 10, which allege that Defendant conspired to convert and remove mishandled evidence, that he in fact did convert evidence to his own use, and that he removed mishandled evidence to prevent its seizure after the arrest of his colleague, Johnny

6

Domingue.

The Government anticipates that the evidence at trial will show that Defendant worked closely with Domingue, Karl Newman, and co-defendant Rodney Gemar. Further, the Government believes evidence will show that Defendant, co-defendant Gemar, Mr. Newman, and Mr. Domingue regularly circumvented DEA evidence policies by storing personal property of arrestees and certain non-drug evidence in their desks without properly logging this evidence into any DEA system. The Government anticipates that evidence will indicate that Defendant converted some of this evidence, including money taken from arrestees, to his own use. Evidence is also expected to indicate that shortly after Domingue's arrest, Defendant, Mr. Gemar, and Mr. Newman formulated a plan to remove the mishandled evidence from their desk areas and to dispose of this evidence by throwing it into the swamps northwest of New Orleans. The Government believes that testimony will reveal that Defendant and his colleagues undertook this evidence destruction effort in order to avoid being caught with these problematic items in any investigation that might arise subsequent to Mr. Domingue's arrest.

Evidence that Defendant had previously been reprimanded for failing to follow proper evidence procedures, and evidence that Defendant was in fact aware of these procedures, is relevant to proving his motive and intent in deciding to hide evidence improperly stored and in deciding to remove the mishandled property at issue in the Superseding Indictment. This extrinsic evidence indicates that in the present case, Defendant: (a) knew his method of storing evidence and arrestee property near his desk was improper; (b) knew that he would likely be in trouble if caught with the mishandled evidence; and (c) had a motive to remove and destroy this evidence to prevent its seizure.

This evidence is relevant to motive, intent, knowledge, and lack of mistake. All four of

these purposes are expressly permitted under Rule 404(b). *See Beechum*, 582 F.2d at 910 (noting that Rule 404(b) allows the introduction of extrinsic evidence to prove motive, intent, knowledge, and absence of mistake, among other purposes). Thus, the Government intends to introduce the evidence at trial.

### b. Defendant's false statements to DEA OPR investigators are relevant to establish his intent and knowledge.

Witness testimony indicates that during the course of the DEA OPR investigation, Defendant lied to investigators about how he acquired Mr. Simon's necklace and about the efforts he made to return it to Mr. Simon. Both of these lies were intended to impede the factfinding process in a federal investigation and to influence the outcome of an official proceeding. This evidence is relevant to show intent and knowledge pertinent to several of the counts against Defendant.

Specifically, the evidence of Defendant's false statements is relevant to prove Defendant's intent in Counts 1 and 2, which allege falsification of government records. These counts require that the Government prove that Defendant made false statements "with the intent to impede, obstruct, and influence" a matter within the jurisdiction of the DEA. Rec. Doc. 71, at 2-3. The evidence also provides proof of intent for the obstruction of justice charges—Counts 3, 5, and 7—which require the Government to show that Defendant "corruptly obstructed, influenced, and impeded, and willfully caused to be obstructed, influenced, and impeded, an official proceeding." Rec. Doc. 71, at 3, 6, 9. Further, the evidence is indicative of Defendant's knowledge in Counts 4 and 6. These counts allege perjury and necessitate that the Government prove Defendant "knowingly made a false material declaration" while under oath in a judicial proceeding. Rec. Doc. 71, at 4, 7.

Defendant's mindset in making the false statements to DEA OPR investigators was analogous to his mindset in making and encouraging the false statements at issue in the present case. Extrinsic evidence should be admitted if "[t]he state of mind inherent in the commission of such nearly identical offenses would necessarily be the same." *United States v. Gordon*, 780 F.2d 1165, 1174 (5th Cir. 1986). Such is the case here. As the Fifth Circuit has explained, the relevance of extrinsic evidence of intent "derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *Beechum*, 582 F.2d at 911. This type of evidence is pertinent to show "that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." *Id.*

Courts within the Fifth Circuit regularly admit extrinsic evidence of intent and knowledge similar to the evidence at issue here. For instance, in a case involving the preparation of false tax returns, the Government was allowed to introduce 404(b) evidence that the defendant knowingly made false statements on his own tax documents in order to show that the defendant knowingly prepared false tax returns for his clients. *United States v. Watson*, 433 F. App'x 284, 287 (5th Cir. 2011). Likewise, evidence that a defendant had previously submitted false bankruptcy, tax, and loan documents was admitted under 404(b) to show a defendant's intent to defraud investors in a real estate scheme. *United States v. Jensen*, 41 F.3d 946, 958 (5th Cir. 1994).[6]

---

[6] The Government is aware that in one visa fraud case, the Fifth Circuit disallowed the use of a prior false statement by the defendant. *United States v. Yong Ping Liu*, 288 F.App'x 193 (5th Cir. 2008). That case is distinguishable from the case at bar. In *Yong Ping Liu*, the Government introduced evidence of an inaccurate statement in the defendant's own visa application to prove that she intentionally falsified another person's application. *Id.* at 202. There, the defendant's prior false statement did not directly relate to an element of the charged offenses. Because the prior false statement failed to connect to a "major issue in dispute," the Circuit concluded that the evidence "functions more as inadmissible character evidence used to prove conformity therewith." *Id.* at 206. As the Circuit explained, the Government "basically argue[d] that [the defendant] lied in the past, therefore she must be lying now." *Id.*

No such improper use is being pursued in the current case. Rather, as explained above, Defendant's prior false statements in this case are directly relevant to prove that he intentionally impeded the investigations identified in the Superseding Indictment and that he knowingly made the false statements described in the Superseding Indictment. This evidence relates squarely to Defendant's intent and knowledge, and thus, it is admissible under 404(b).

In this case, Defendant's prior false statements to DEA OPR investigators are relevant to proving Defendant's intent to impede in Counts 1, 2, 3, 5, and 7, as well as his intent to knowingly make a false statement in Counts 4 and 6. Therefore, the Government should be permitted to introduce the evidence of Defendant's prior false statements under 404(b).

*2. Evidence that Defendant was previously counseled regarding the misuse of confidential informants is relevant to show knowledge, plan, preparation, and absence of mistake.*

Evidence that Defendant had previously been reprimanded regarding his misuse of confidential informants is relevant in the current case to prove Defendant's knowledge, plan, preparation, and absence of mistake in Counts 1 through 7 and 11 of the Superseding Indictment.

Counts 1 through 7 are the falsification of government records, obstruction of justice, and perjury counts described above. In Count 11, Defendant is charged with receiving a gratuity from a cooperator named Jabar Watson.

As relevant to each of these charges, the Government intends to produce evidence at trial showing that Defendant did not follow established DEA procedure in his interactions with Mr. Brown and Mr. Watson, did not formally sign these individuals up as informants as required by DEA policy, and routinely failed to document interactions he had with them. This evidence will be used to show that Defendant intentionally circumvented DEA policy so that he could meet with his informants without oversight or restriction, which in turn allowed him to use these informants to facilitate his own criminal acts. Extrinsic evidence showing that Defendant was aware of DEA policy regarding confidential informants and that he had been previously counseled about his failure to comply therewith is thus pertinent to prove that his policy failures in the present case were knowing, intentional, and part of his plan to engage in criminal activity.

Extrinsic evidence is regularly admitted "for the limited legitimate purpose of proving

knowledge or intent." *United States v. Evans*, 572 F.2d 455, 484 (5th Cir. 1978). This type of evidence is also allowed "to prove 'plan' where the existence of a plan is relevant to some ultimate issue in the case." *United States v. West*, 22 F.3d 586, 594 (5th Cir. 1994). Evidence of extrinsic acts may also be admitted to prove a defendant's absence of mistake. FED. R. EVID. 404(b)(2).

Here, evidence of Defendant's prior reprimands for failing to adhere to established DEA policies regarding the use of confidential informants is relevant to show Defendant's plan, intent, and absence of mistake in Counts 1 through 7 and 11. Therefore, this evidence should be allowed at trial.

> *3. Evidence that Defendant solicited false statements from Mr. Cerdes is relevant to show plan, preparation, and intent.*

Finally, the Government intends to introduce evidence indicating that Defendant coerced Julius Cerdes to make a false statement implicating an individual who had been criminally charged in a case in which Defendant participated. In return, Defendant offered Mr. Cerdes a benefit related to his charges. This extrinsic evidence is relevant to show Defendant's plan, preparation, and intent for the obstruction of justice and perjury charges listed in Counts 3 through 7.

Defendant's efforts to solicit false statements from Mr. Cerdes in exchange for a benefit connected to his criminal charges are "nearly identical" to Defendant's efforts to obtain false statements from Messrs. Brown and Martinez. *Gordon*, 780 F.2d 1at 1174. As such, Defendant's state of mind "would necessarily be the same." *Id*. This evidence of a "common plan" is admissible under 404(b). *United States v. Means*, 695 F.2d 811, 817 (5th Cir. 1983).

Defendant's efforts to encourage Mr. Cerdes to lie and his actions to induce Messrs. Brown and Martinez to lie share a "common characteristic" that is a "significant one for the purpose of the inquiry at hand." *Beechum*, 582 F.2d at 911 (5th Cir. 1978) (internal quotation omitted).

Indeed, these efforts are nearly identical. This extrinsic evidence should be permitted at trial.

**Conclusion**

Through this filing, the Government gives notice to Defendant of extrinsic evidence it intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). For the reasons described above, the Government's proposed 404(b) evidence is permissible, relevant, and not unduly prejudicial. Therefore, the Government respectfully asserts that it should be allowed to introduce this evidence at trial.

Respectfully submitted,

Brian A. Benczkowski
Assistant Attorney General for the Criminal Division
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C § 515

 */s/ Timothy A. Duree*
Charles A. Miracle (OH #67814)
Assistant Deputy Chief
Timothy A. Duree (TX #24065179)
Trial Attorney
U.S. Department of Justice
Criminal Division
1400 New York Avenue, NW
Washington, DC 20005
(202) 616-2660
timothy.duree2@usdoj.gov
charles.miracle@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

                                              */s/ Timothy A. Duree*
                                              Timothy A. Duree
                                              Trial Attorney
                                              U.S. Department of Justice