UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION |
| v. | * | CASE NO. 17-cr-00181-JTM-DMD |
| CHAD ALLEN SCOTT | * | |
| | * | |

\* \* \*

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR
FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE**

**MAY IT PLEASE THE COURT:**

The Defendant, Chad Allen Scott ("Defendant"), through undersigned counsel appearing on behalf of the Defendant for the limited purpose of filing the instant motion (Rec. Doc. No. 385), respectfully submits the following reply brief in support of his motion for a new trial based on newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

**I. RELEVANT PROCEDURAL HISTORY**

On January 22, 2019, the original trial of Counts 1 through 7 began. Rec. Doc. No. 199. On February 4, 2019, with the jury hopelessly deadlocked on all counts, the Court declared a mistrial. Rec. Doc. No. 209. On August 19, 2019, the re-trial of Counts 1 through 7 began. Rec. Doc. No. 336. On August 27, 2019, trial ended with a guilty verdict on all seven counts. Rec. Doc. No. 347. On September 6, 2019, the Court granted Defendant's request for an extension of time until October 10, 2019 to file motions for judgment of acquittal and new trial. Rec. Doc. No. 384. On October 9, 2019, the Defendant filed a motion for judgment of acquittal, or alternatively, for a new trial. Rec. Doc. No. 409. On November 5, 2019, the Government filed its opposition to the Defendant's motion. Rec. Doc. No. 420. To date, the Court has not ruled upon Defendant's

motion. On December 3, 2019, the Defendant filed his motion for a new trial based on newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Rec. Doc. No. 434. On December 4, 2019, the Court ordered that the Government file any response by January 8, 2020 and that the Defendant may file any reply brief by January 16, 2020. Rec. Doc. No. 439. On January 7, 2020, the Government filed its opposition. Rec. Doc. No. 445.

## II. GOVERNMENT'S RESPONSE

In its opposition, the Government, *for the very first time*, now admits and claims that it learned about its star witness's ongoing criminal conduct that included smuggling cocaine and heroin into a local prison facility, distributing cocaine and heroin throughout the facility, and expressing his intention on murdering his wife on **September 4, 2019**, just days following the trial that concluded on August 27, 2019. *See* Rec. Doc. No. 445 at p. 1. However, although the Government provided **five DEA-6 reports** documenting activity and interviews concerning Edwin Martinez's ongoing drug dealing, the Government **only** provided reports that documented this activity beginning on **September 17, 2019**, not **September 4, 2019 or September 10, 2019**. *See* Government's Disclosure dated November 21, 2019 filed under seal and attached hereto as Exhibit 1. Simply put, the Government **has failed to produce any report of such activity from September 4, 2019 or September 10, 2019**. Their refusal to produce any other reports is all the more baffling when the first report (Exhibit A) specifically references an earlier "report of investigation (ROI) titled 'Proffer Interview of [known witness]' written by Task Force Officer (TFO) [known TFO]." Exhibit A at p. 1 (DEA_001399). Following the filing of its opposition, the undersigned specifically asked the Government whether any other reports exist; however, the Government failed to answer that inquiry. Instead, the Government replied that the Government's "[m]otion response is complete." As for the importance of reports within federal law enforcement,

the Government specifically presented testimony in its own case-in-chief from its own expert witness, DEA S/A Will Glaspy: "If we can't trust our law enforcement to **accurately and truthfully write their reports**, **then there is no justice within the Department of Justice**." Trial Transcript (August 21, 2019) p. 586:9-11 (emphasis added). As the Government has failed to answer whether any other reports exist, an evidentiary hearing is necessary so as to ensure that minimum due process is afforded the Defendant.

Notably, in their response, the Government submitted an Affidavit from Tracey Knight, Assistant United States Attorney, which specifically provides that the Government received information concerning Edwin Martinez's ongoing criminal activity, which occurred before and while he testified against the Defendant. The Affidavit provides that the Government possessed this information as early as September 4, 2019, yet the Government produced no corresponding report and fails to even declare whether one even exists. *See* Government's Exhibit 1 filed under seal at ¶ 4. In addition, the Affidavit provides that the Government obtained "more specific information" on September 10, 2019, yet the Government produced no corresponding report and fails to even declare whether one even exists. *See* Government's Exhibit 1 filed under seal at ¶ 6. Why does the Government refuse to answer whether any additional reports exist? It would be simple enough to simply declare that no such additional reports were generated and, therefore, there are no additional reports to produce. Instead, the Government refused to answer and simply stated that their "response is complete." The Government's refusal to answer this simple inquiry alone calls for an evidentiary hearing.

The Affidavit also declares that after conducting an investigation into Edwin Martinez's ongoing criminal conduct, the Government refused to prosecute Martinez. *See* Government's Exhibit 1 filed under seal at ¶ 12. Just as the Defendant detailed in his original motion, the

Government has given Martinez a literal "free pass" for his continued violations of federal law. Instead of prosecuting Martinez, the Government tries to defend its undisclosed immunization of Martinez by describing the allegations against him as simply "rumors" and "inconsistent" statements by witnesses. *See* Rec. Doc. No. 445 at p. 2. Tellingly, the Government failed to specifically address numerous accounts that Martinez expressed his intention on murdering his wife; instead, the Government attempted to whitewash this issue by referring to it as "other misconduct." *See id.* In the same Affidavit, the Government attempted to offload the decision to give Martinez yet another "free pass" for his ongoing criminal conduct on the United States Attorney's Office in New Orleans; however, that office allegedly did not have any contact with the Martinez matter following a self-imposed recusal years ago and the Government even presented prosecutors from Texas at trial who testified that **they** prosecuted/handled Martinez's federal case following the recusal by the United States Attorney's Office in New Orleans.

Interestingly, the Affidavit also provides that Government Counsel "recommended" that investigators "work through" Martinez's attorney, Christopher Edwards (himself another witness called by the Government against the Defendant), even though these new allegations would not mandate his involvement in keeping with applicable federal law. *See* Government's Exhibit 1 filed under seal at ¶ 12. Since Martinez was never charged with any such new crimes, his Sixth Amendment right to counsel had not yet attached and the Government was free to confront him with those allegations. Instead, the Government apparently "worked through" Martinez's attorney on his separate and prior charges. Not surprisingly, Martinez then denied the allegations but for the admission that he illegally used suboxone in prison. As for Martinez's most recent interview, the Government attempted to defend its refusal to seek justice for the crimes that Martinez

continues to commit because Martinez himself simply denied the allegations. Rec. Doc. No. 445 at p. 3.

### III. LAW AND ARGUMENT

The gravamen of the Government's argument in its opposition to new trial is that the newly discovered material, namely the allegations concerning Martinez's ongoing drug use and drug dealing, is "improper impeachment evidence" which "could not be utilized for any legitimate trial purpose." *See id.* at pp. 5-9. On the contrary, newly discovered evidence regarding a prosecution witness is grounds for a new trial. *See, e.g.*, *United States v. King*, 232 F.Supp.2d 636, 649 (E.D.V.A. 2002) (false testimony by prosecution witness in drug conspiracy prosecution against police officers sufficient to warrant new trial); *United States v. Turner*, 490 F.Supp. 583, 610 (E.D. Mich. 1979) (new trial warranted where prosecution witness falsely testified at trial because such actions were an "[a]ffront to the court's dignity . . . .").

*A. Government Failed to Even Address Multiple Items that Impact Martinez's Credibility*

Remarkably, in its opposition, the Government completely ignored and failed to address the significance of the information provided by a known witness in the sealed Exhibit A. In that interview, the known witness relayed to investigators that Martinez proclaimed that he was **"getting out [of prison] for providing cooperation against a DEA Agent."** *See* Exhibit A at p. 1. There, without a doubt, Martinez perjured himself because Martinez specifically testified under direct examination by Government Counsel that he was *only* testifying at trial: "**Just so the truth can come out about Mr. Chad Scott**." Trial Transcript Excerpt attached to Rec. Doc. No. 434 as Exhibit F. This perjury alone calls for a new trial (false testimony), and the Government's utter failure to even attempt to defend it is telling.

In its opposition, the Government spent considerable time claiming that none of the newly discovered evidence is inadmissible. To the contrary, Rule 613 of the Federal Rules of Evidence provides that prior inconsistent statements of a witness are admissible for impeachment of the witness's credibility with respect to both material and collateral issues of fact. Fed. R. Evid. 613; *see also United States v. Sisto*, 534 F.2d 616, 622 (5th Cir. 1976) ("It is hornbook law that evidence of prior inconsistent statements of a witness may be admitted to impeach that witness."). In *United States v. Lay*, the Fifth Circuit held that the trial judge erred by excluding testimony regarding prior inconsistent statements: "[The witness] was questioned about the statements he allegedly made to [the defendant] and he denied making them. Thus, [the defendant's] testimony, a **form of extrinsic evidence**, was admissible to impeach [the witness]." *United States v. Lay*, 644 F.2d 1087, 1089–90 (5th Cir. Unit A May 13, 1981) (emphasis added).

Next, in addition to failing to address the above-listed perjury, the Government likewise failed to address the information that is contained in Exhibit C, which documents, among other things, that **Martinez bribed another inmate to "take the blame in exchange for drugs" that had been confiscated**. This too calls for a new trial, and the Government's utter failure to even attempt to defend it is telling.

Finally, as documented in Exhibits A and D, the Government failed to address the fact that Martinez recently admitted that he possessed two illegal cellphones in prison that were found in a **pre-trial** "shake" (jail search/seizure); however, the Government never revealed this pre-trial jail search/seizure to the Defendant and, therefore, the Defendant was robbed yet again of the ability to challenge Martinez's credibility.

*B. Martinez's Drug Dealing and Intentions of Murdering His Wife Impact His Credibility*

In its opposition, the Government spent the majority of its efforts on its main argument that Martinez's "drug use and drug dealing . . . have no bearing at all on Mr. Martinez's credibility as a witness." Rec. Doc. No. 445 at pp. 5-6.  To the contrary, it is well settled that cross-examination may be used to break down the testimony of the direct examination, to affect the credibility of the witness, or to show bias or motive to lie.  *See Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("[t]he cross examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness."); *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (same); *United States v. Vasilios*, 598 F.2d 387, 389 (5th Cir. 1979); *Montgomery v. United States*, 203 F.2d 887, 891 (5th Cir. 1953) ("Indeed, cross-examination, as has been often observed, is the surest test yet devised of the truthfulness of a witness' testimony, and its allowance is **especially important** in the case of a witness **who is himself an admitted violator of the law**.") (emphasis added).

Further, Rule 611(b) of the Federal Rules of Evidence provides that the **scope** of cross examination includes "matters affecting the witness's credibility."  Fed. R. Evid. 611(b); *see also United States v. Musk*, 719 F.3d 962, 966 (8th Cir. 2013) (Rule 611(b) permits questioning on "matters affecting the witness's credibility.").  It is axiomatic that the Constitution guarantees "that a defendant be given an opportunity to place the prosecution's witnesses in their proper setting and test the weight of their testimony and **their credibility before the jury**."  *United States v. McKinley*, 493 F.2d 547, 550 (5th Cir. 1974) (emphasis added).  Moreover, Rule 608(b) of the Federal Rules of Evidence allows reference to specific instances of conduct on cross examination to demonstrate a witness's "[c]haracter for truthfulness or untruthfulness . . . ."  Fed. R. Evid. 608(b); *see also United States v. Barrentine*, 591 F.2d 1069, 1081 (5th Cir. 1979) (cross examination of government witness's prior arrests proper).  Finally, specific instances of conduct

offered to show bias are admissible. *United States v. Abel*, 469 U.S. 45, 51 (1984). Further, a denial of a defendant's right to impeach a witness for bias violates the Confrontation Clause. *Delaware v. Van Arsdall*, 475 U.S. 673 (1986).

### C. Martinez's Drug Use Impacts His Credibility

Curious still is the Government's position that Martinez's illegal use of suboxone would have been inadmissible. Clearly, a witness's drug use during trial is relevant to the witness's competency and credibility. *See United States v. Garner*, 581 F.2d 481, 485 (5th Cir. 1978) (explaining that drug use by witness bears upon credibility); *United States v. Partin*, 493 F.2d 750, 763 (5th Cir. 1974) ("[I]t is therefore error to reject testimony that speaks to a witness's 'ability to comprehend, know, and correctly relate the truth.' "); *Jarrett v. United States*, 822 F.2d 1438, 1446 (7th Cir. 1987) (explaining that a witness's use of drugs may be used to attack "his or her ability to perceive the underlying events [or] testify lucidly at the trial").

### D. Newly Discovered Evidence Calls for New Trial

A Rule 33 motion for a new trial must be granted when "the interest of justice so requires." *United States v. Robertson*, 110 F.3d 1113, 1120 n. 11 (5th Cir. 1997). Here, the interest of just does, in fact, require a new trial. As the **Government** itself argued throughout in its opening statement in the trial of this matter: this "[t]rial is about honesty and integrity. . . ." Trial Transcript (August 19, 2019) p. 143:17-18. After all, "[h]onesty and integrity are important characteristics for anyone but for law enforcement officers, they are **paramount**." Trial Transcript (August 19, 2019) p. 143:21-22 (emphasis added). Unlike the past tense the Government used at trial to describe Edwin Martinez - "Edwin Martinez **sold cocaine and heroin**, and he also **had** a source of supply[.]" (Trial Transcript (August 19, 2019) p. 158:8-9) – as we now know, Edwin Martinez, in fact, **continued** to sell cocaine and heroin; all while he testified against the Defendant under the

...
...

Government's immunized protection. Ironically, at trial, the Government argued that: "[T]o hold that kind of authority is an honor and a privilege, and with it comes a responsibility **to use that power the right way**. Trial Transcript (August 27, 2019) p. 1445:20-22. Surely, due process calls for the Government to follow its own professed standards of "using that power the right way." Accordingly, the Defendant requests that the Court order a new trial based on this newly-discovered evidence.

### E. Defendant Requests Evidentiary Hearing

Alternatively, the Defendant requests that the Court order an evidentiary hearing in furtherance of the Defendant's motion.[1] Here, the Government now admits that it had knowledge of allegations of Martinez's pre-trial and ongoing criminal conduct as of September 4, 2019 but failed disclose any of those allegations to the Defendant until **months later**, on November 21, 2019. *See* Government's Disclosure dated November 21, 2019 filed under seal and attached hereto as Exhibit 1. Even on that date, the Government *only* disclosed five DEA-6 reports and did not disclose or produce any reports reflecting the activity that they themselves now admit occurred on September 4, 2019 and September 10, 2019. The Government must not be allowed to reference allegations made against its star witness on September 4, 2019 but not produce reports, communications, or other documents that chronical those substantive activities. If the Government has clean hands, then why wait more than two months to reveal these allegations to the Defendant? Instead, the Government concealed the information until it decided that it would continue to give Martinez a "free pass" by not prosecuting him for any of the numerous federal crimes he committed *before and while* he testified against the Defendant; all while concealing those crimes from the

---

[1] Under Rule 33, "[t]he trial judge may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial." *United States v. Robertson,* 110 F.3d 1113, 1117 (5th Cir. 1997).

defense and robbing the Defendant from cross examining Martinez as mandated by the Confrontation Clause of the United States Constitution. In addition to the timing and substance of these disclosures, an inquiry into the communications between Martinez, his attorney-witness Christopher Edwards, and the Government is relevant to the instant motion. For the above-listed reasons, all of those items require an evidentiary hearing.

Respectfully submitted,

/s/ Matthew M. Coman
MATTHEW M. COMAN #23613
GARCIA & ARTIGLIERE
400 Poydras Tower
400 Poydras Street, Suite 2045
New Orleans, Louisiana 70130
Telephone: (504) 628-4251
mcoman@lawgarcia.com

-and-

/s/ Stephen M. Garcia
STEPHEN M. GARCIA (*Pro Hac Vice*)
GARCIA & ARTIGLIERE
One World Trade Center, Suite 1950
Long Beach, California 90831
Telephone: (562) 216-5270
Facsimile: (562) 216-5271
sgarcia@lawgarcia.com

ATTORNEYS FOR DEFENDANT
CHAD ALLEN SCOTT