UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 2:17-cr-181** |
| **CHAD ALLEN SCOTT, ET AL** | **SECTION "H"** |

**MEMORANDUM IN SUPPORT OF RENEWED MOTION TO COMPEL DISCOVERY**

**MAY IT PLEASE THE COURT:**

Defendant, Chad A. Scott ("Scott" or "Defendant"), submits this Memorandum in Support of his Motion to Compel Discovery. The discovery at issue involves investigative materials related to the criminal complaint filed in the Southern District of Texas against Johnny Domingue ("Domingue"), a critical witness in the upcoming trial on the second set of counts against Scott.

Although this Court previously denied Scott's motion seeking the production of the investigative materials (R. Doc. 519), emails recently produced by the Government make clear that 1) the Government intends on calling Johnny Domingue as a witness in its case; and 2) the Government's prosecution team in this case has become part of Domingue's prosecution team in the Southern District of Texas. In January of this year, Charles Miracle contacted Johnny Domingue's Southern District of Texas appointed defense attorney (Mark Diaz) about Domingue testifying and providing "substantial assistance" against Chad Scott in exchange for the government "filing a Motion for Downward Departure Under U.S.S.G. Section 5K1." The emails memorializing this arrangement are copied in the text below:

1

## Email #1

**From:** Alaniz, Anibal (USATXS)
**To:** Mark Diaz
**Cc:** MacDonald, Casey (USATXS); Miracle, Charles (CRM)
**Subject:** RE: Johnny Domingue
**Date:** Wednesday, January 13, 2021 2:59:58 PM

Mark,

Yes, if your client provides "substantial assistance" to the government, we will file a motion for downward departure under U.S.S.G. Section 5K1.

Thanks,

Anibal J. Alaniz
Assistant United States Attorney

---

**From:** Mark Diaz <mark@texascriminaljustice.com>
**Sent:** Wednesday, January 13, 2021 1:33 PM
**To:** Alaniz, Anibal (USATXS) <AAlaniz@usa.doj.gov>
**Subject:** Johnny Domingue

Good afternoon,

As I am sure you are aware, Mr. Miracle called me today about my client testifying in another matter for the Government. Will you afford Mr. Domingue any benefit for doing so?

JD-SDTX_001

2

## **Email #2**

**From:** Mark Diaz
**To:** Miracle, Charles (CRM)
**Subject:** RE: Johnny Domingue
**Date:** Wednesday, January 13, 2021 4:02:13 PM

Mr. Alaniz has indicated that he will provide 5k relief if Johnny substantially assists the Government. Let me know how you would like to move forward.

**From:** Miracle, Charles (CRM) <Charles.Miracle@usdoj.gov>
**Sent:** Wednesday, January 13, 2021 12:38 PM
**To:** markdiaz@texascriminaljustice.com
**Subject:** Johnny Domingue

Mr. Diaz,

I'd like to speak with you regarding your client Mr. Domingue. I can be reach at the below cell number. Thanks.

Charlie Miracle
U.S. Department of Justice
Assistant Deputy Chief, NDDS
Office: 202-616-0712 / Cell: 202-262-9840

JD-SDTX_002

Notably, Anibal Alaniz, the AUSA prosecuting Domingue in Texas refers to the Domingue and Scott prosecution teams as the "Government." Neither Mr. Miracle nor Mr. Alaniz differentiate between the Domingue and Scott prosecution teams in the emails. Nor could they because the emails make clear that the Scott and Domingue prosecution teams are working together and have reached an agreement among their respective offices to file a Motion for Downward Departure on Domingue's behalf in exchange for Domingue's substantial assistance in testifying against Scott in his trial.

I.   **Background**

    A.   **Background on the second set of counts**

The second set of counts against Scott involves the alleged conversion of seized property located in file cabinets in the DEA office in Metairie, Louisiana. The allegedly converted property consists of cash from wallets, a plastic gun case, and a drawer of old flip phones. Significantly, the only Government witnesses with firsthand knowledge of these alleged conversions are Karl Newman and Johnny Domingue, former members of the DEA task force.

Throughout the second set of charges, the date of January 26, 2016 looms large.[1] This is the date of Johnny Domingue's arrest here in Louisiana, which was the catalyst for the events giving rise to the second set of charges. The Government's theory is that Scott and his co-defendant converted the property in question for two reasons, both relating directly to Johnny Domingue: (1) to pay for Johnny Domingue's defense of charges related to his January 26, 2016 arrest; and (2) to get rid of property in the event Johnny Dominque decided to cooperate with the Government and implicate the defendants as co-conspirators to conversion.

---

[1] *E.g.*, ¶¶ 39, 41, and 43 of the Superseding Indictment. (R. Doc. 71).

      **B.**      **The Government consented to Johnny Domingue's request for early termination of supervised release in August 2020.**

On February 22, 2018, Johnny Domingue pleaded guilty before Judge Eldon Fallon to two counts of possession with intent to distribute cocaine and conspiracy to commit conversion of property by government officer.

Judge Fallon sentenced Johnny Domingue to twenty-one months imprisonment and three years of supervised release. The conversion count to which Johnny Domingue pleaded guilty is essentially the same as the conversion counts contained in the second set of charges against the defendants in this case.[2] Johnny Domingue began cooperating with the Government shortly after his January 2016 arrest and his cooperation helped lead to the indictment in this case. In fact, Johnny Domingue testified as a Government witness in both trials in this case pertaining to the first set of charges against Scott. Johnny Domingue commenced his term of supervised release on March 8, 2019.

      **C.**      **Johnny Domingue is arrested in Texas in September 2020.**

On September 9, 2020, a criminal complaint was filed charging Johnny Domingue with the violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute more than five kilograms of cocaine.[3] According to the criminal complaint, Johnny Domingue began contacting a HSI confidential informant ("CI") in **August 2020** about distributing cocaine in Houston and Louisiana.[4] Johnny Domingue previously met the CI while both were in federal custody at the Federal Detention Center in downtown Houston.

---

[2] *See* Exhibit 2, No. 2:16-cr-00092 (E.D. La.); R. Doc. 116.

[3] Attached hereto as Exhibit 1 is a copy of the Criminal Complaint, *United States of America v. Johnny Jacob Domingue*, No. 4:20-cr-00470 (S.D. Tex.).

[4] According to Special Agent Juan Varela, Jr. of the United States Homeland Security Investigations Unit ("HSI").

Ultimately, on September 9, 2020, HSI agents executed a controlled buy with Johnny Domingue, culminating with Johnny Domingue driving a vehicle that contained eight kilograms of cocaine, with which he was caught red-handed. According to Agent Varela, in August 2020, Johnny Domingue exchanged multiple phone calls and text messages about the scheme to distribute eight kilograms of cocaine, which has a street value of $800,000. According to PACER, Johnny Domingue remains in custody in Texas for his September 9, 2020 arrest and is scheduled for trial on June 7, 2021, the same day this trial begins.[5]

**On September 2, 2020**, one week before Johnny Domingue's arrest for attempting to distribute eight kilograms of cocaine, Judge Fallon issued an order denying Domingue's request for early termination of supervised release.[6] According to Judge Fallon, on **June 29, 2020,** the Court processed correspondence from Johnny Domingue requesting early termination of supervised release.[7] Notably, Judge Fallon memorialized that the Government did not oppose Domingue's request for early termination.

Domingue's request for early termination of supervised release paints the picture of Domingue as reformed and rehabilitated, having no altercations of any type with law enforcement, passing all drug tests, and maintaining full employment, residency, and outpatient counseling. What Domingue didn't tell Judge Fallon was that he was at the same time concocting a scheme to distribute massive quantities of cocaine back into Louisiana. Obviously, Domingue's request to Judge Fallon constitutes impeachment evidence when he testifies in the upcoming trial against Scott insofar as the request contains several false statements.

---

[5] *United States of America v. Johnny Jacob Domingue*, No. 4:20-cr-00470 (S.D. Tex.), R. Doc. 10.
[6] Attached hereto as Exhibit 3, No. 2:16-cr-00092 (E.D. La.), R. Doc. 164.
[7] Attached hereto as Exhibit 4, R. Doc. 163-1.

In an effort to reduce the issues in dispute, Scott is requesting the following pared-down list of discovery from the Government:

- case file of Juan Manuel Varela, Jr., including all debriefing notes from the CI referenced in Attachment "A" relative to the criminal complaint filed in *United States of America v. Johnny Jacob Domingue*, Case No. 4:20-cr-00470 (S.D. Tex.);

- all recordings of phone calls involving Johnny Domingue since he has been in custody in *USA v. Johnny Jacob Domingue*, Case No. 4:20-cr-00470 (S.D. Tex.) until the present; and

- all recordings of phone calls involving the CI referenced in Attachment "A" to the criminal complaint filed in *United States of America v. Johnny Jacob Domingue*, No. 4:20-cr-00470 (S.D. Tex.).

Now, considering the newly produced emails between the Government's prosecution team and Domingue's counsel, the materials related to the Texas investigation against Johnny Domingue are clearly material to this case are in the possession, custody, and/or control of the Government and constitute impeachment evidence.

## II.   Law and Argument

On a defendant's request, the Government must produce any document or object in its possession, custody, or control that is "material to preparing the defense":

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is **within the government's possession, custody, or control** and:
>
>    (i) **the item is material to preparing the defense**;
>    (ii) the government intends to use the item in its case-in-chief at trial; or
>    (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). As detailed below, the information that Scott seeks is in the possession, custody, or control of the Government and is material to the upcoming trial.

### A. The materials are in the possession, custody, and control of the Government.

First, the materials are in the possession, custody, and/or control of the Government. Although Rule 16(a)(1)(E) refers only to materials within the Government's "possession, custody, or control," those materials include any materials in the hands of a governmental investigatory agency closely connected to the prosecutor. *United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir. 1978). In a Jencks Act case,[8] the Fifth Circuit held:

> The Jencks Act is not restricted to statements in the hands of, or known to, the particular prosecuting attorney assigned to the case, the U.S. Attorney's office, the Criminal Section of the Justice Department, or even the entire Justice Department.

*United States v. Ramirez*, 174 F.3d 584, 588 (5th Cir. 1999) (quoting *United States v. Beasley*, 576 F.2d 626, 631 (5th Cir. 1978) (internal quotation marks omitted). "Certainly the prosecutor would not be allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial; such evidence is plainly within his Rule 16 'control.'" *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir. 1977).

Prosecutors have an affirmative duty to disclose evidence that is both favorable to the defendant and material to either guilt or punishment.[9] In addition to providing information in its custody, the Government has an affirmative duty to seek out favorable evidence "known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995); *see also United States v. Auten*, 632 F.2d 478 (5th Cir. 1980) ("If disclosure were excused in instances where the prosecution has not sought out information readily

---

[8] *Ramirez* was a Jenks Act case, but the same rationale applies to Rule 16 and *Brady*. In 2018, a Texas district court held that there is "no meaningful, substantive distinction between possession under the Jencks Act and the requirement that producible material be 'in the possession of the Government' under *Brady*." *United States v. Fackrell*, No 1:16-CR-26(2), 2018 WL 7821081, at *4 (E.D. Tex. Feb. 9, 2018) (citing *Ramirez*).

available to it, we would be inviting and placing a premium on conduct unworthy of representatives of the United States Government."). Further, a prosecutor's duty to disclose favorable evidence to the defense extends to evidence that would impeach a government witness. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). Stated simply, the prosecution's obligation to produce favorable evidence is broad.[10]

In *United States v. Deutsch*, the prosecution argued that it was not required to produce personnel file materials of its principal witness because the materials were held by another government agency. *United States v. Deutsch*, 475 F.2d 55, 58 (5th Cir. 1973), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984). The Fifth Circuit observed that the prosecution did not deny that it had access to the files and had not even attempted to acquire the materials. Ultimately, the Fifth Circuit found that the prosecution should have supplied the file materials to the defendant:

> We do not suggest by citing *Barber* that the government was obliged to obtain evidence from third parties, but there is no suggestion in *Brady* that different "arms" of the government, particularly when so closely connected as this one for the purpose of the case, are severable entities.

*Id*.

Email correspondence from the Government's prosecution team in this case to Domingue's attorney show that the Scott's prosecution team is actively working with government prosecutors in Texas to secure Domingue's favorable testimony against Scott in exchange for a downward departure motion in Texas. In opposing Scott's original Motion to Compel, the Government

---

[10] Expounding on the interplay between Rule 16 and *Brady*, one commentator has said:
> Liberality in passing on discovery motions under [Federal Rule 16] . . . would be consistent with the Supreme Court's recognition that 'disclosures, rather [than] suppression, of relevant materials ordinarily promotes the proper administration of criminal justice.'

4 Barron & Hotlzoff, Federal Practice and Procedure at 65 (quoting *Dennis v. United States*, 384 U.S. 855, 869 (1966); *United States v. White*, 450 F.d 264, 268-69 (5th Cir. 1971).

vehemently asserted that it was "completely different," "totally separate," and "distinct" from the Texas prosecution/investigation team.[11] The Government's emails say otherwise. The Government has been involved with other prosecutions involving Domingue, dispelling any notion that the Government's prosecution team in this case is so far removed from the Government's team in the Texas investigation that the materials are wholly unreachable. As in *Deutsch*, the Government has not asserted that is has been denied access to the materials. The requested materials are in the possession, custody, and/or control of the Government in Scott's case because they are working with the Texas prosecutors who undeniably possess the Domingue file materials at issue herein.

### B. The Texas investigation materials are material.

Next, the information sought by Scott is material. "[M]aterial to preparing the defense," in the context of Rule 16(a)(1)(E), is broad. It is enough that there exists "'some indication' that pretrial disclosures of the information sought 'would have enabled the defendant significantly to alter the quantum of proof in his favor.'" *United States v. Goris*, 876 F.3d 40, 44–45 (1st Cir. 2017) (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975)). "This significant alteration may take place in a myriad of ways, such as 'uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id*. (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (citations omitted)). Scott need only make a prima facie showing that the information he seeks is material to obtain discovery under Rule 16. *United States v. Licciardi*, No. 14-cv-284, 2016 WL 815509, at *1 (E.D. La. Mar. 2, 2016) (quoting *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978)). Here, the information sought is material because Domingue's recent arrest is connected to the upcoming trial in this case:

- Domingue is a co-conspirator in the operative indictment relative to the conversion and removal counts (Counts 8–10) at issue in this case;

---

[11] R. Doc. 509 at p. 6.

- Domingue pleaded guilty to conversion for conduct alleged in Count 8 of the superseding indictment in this case;

- Domingue's January 25, 2016 arrest was the catalyst for specific acts of alleged conversion in Counts 8 and 9 of the superseding indictment in this case; and

- Domingue met his Texas cocaine source while imprisoned from his guilty plea in this district at the same time that he was meeting with the prosecutor in this case and preparing to be a Government witness against Chad Scott in his prior trials in this district.

Further, it is undisputed that at the time that Johnny Domingue was negotiating with the Government's CI in Houston, Johnny Domingue was also seeking early termination of supervised release from Judge Fallon here in New Orleans.

The investigative materials in the Texas case are "material to preparing the defense" in a myriad of ways. Unquestionably Scott's counsel will use the investigative materials to "uncover[] admissible evidence, aid[] witness preparation, corroborat[e] testimony, [and] assist[] impeachment or rebuttal." *Lloyd*, 992 F.2d at 351. No one can credibly dispute that the investigative materials will significantly alter the quantum of proof in Scott's favor. Rule 16, in addition to *Brady* and its progeny, entitle Scott to the investigative materials, including all reports by law enforcement, and recorded calls and texts between Johnny Domingue and the CI. Based on information known or produced, Scott will cross-examine Domingue on his eight-kilogram cocaine arrest and the Government's offer to provide a downward departure memo to show bias and motive as well as to attack Domingue's credibility for lying to Judge Fallon in his summer of 2020 letter seeking early termination of supervised release. Now that the door is open to the cocaine distribution count, Scott is entitled to the arrest file and related discovery sought to fully confront Domingue with other instances of bias, motive, and false or inconsistent statements that he may have made relative to his anticipated testimony against Scott and the conversion counts at issues (Counts 8–10) in which Domingue is an alleged conspirator. *See Brady v. Maryland*, 373

U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faither or bad faither of the prosecution.").

It is often observed that "it is entirely up to the government to police itself to ensure that its constitutional discovery obligations are met in every case." *What Good Will the "Due Process Protections Act" Do?*, THE NATIONAL LAW REVIEW, Dec. 17, 2020, available at https://www.natlawreview.com/article/what-good-will-due-process-protections-act-do (last visited April 30, 2021). Congress recently acknowledged that the government often fails to live up to its constitutional duty: In a rare display of bipartisanship, Congress enacted The Due Process Protections Act last year to amend Federal Rule of Criminal Procedure 5 to require federal district judges to remind prosecutors of their duty to disclose *Brady* material specifically.

"[T]he DPPA is merely a simple reminder of a truism stated in the *Brady* decision—and that should be taken to heart by everyone involved in the criminal justice process, especially federal prosecutors—that '[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.' *Brady*, 373 U.S. at 87." *Id*. If the Government will not produce the documents requested here, and the Court will not compel it, the Court might at minimum review the documents itself to ensure that they do not include *Brady* material to which Scott is entitled.

    **C.**    **Scott is Entitled to the Requested Information for Impeachment Purposes.**

The Government's prosecution team is working directly with Domingue to provide 5k letters regarding other prosecution(s) against Domingue for favorable testimony in this case. Accordingly, Scott is entitled to discovery regarding the Texas Investigation against Domingue to identify the extent of Domingue's partiality in this case.

"The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony."[12] In *United States v. Landerman* a charge was pending against a witness for the prosecution and the Fifth Circuit found that evidence of such pending charge was admissible as to the witness's motive to testify against the defendant.[13] The Fifth Circuit noted, "the right to cross examination 'is particularly important when the witness is critical to the prosecution's case.'"[14] In *United States v. Mizell* the defendant's counsel "wanted to ask [the prosecution's sole witness] about inconsistent statements that he had made to the [investigators] about [defendant's] and [the prosecution's sole witness] own involvement in the robbery and whether implicating [defendant] in the robbery was [the prosecution's sole witness's] only chance for leniency with the government."[15] The Fifth Circuit found that evidence of the witness's bias and motive for testifying against the defendant should have been admitted.[16]

Here, Domingue is a key witness for the Government—as in *Mizell* and *Landerman*. Domingue is bargaining with the Government regarding his testimony against Scott, and Scott is entitled to full discovery regarding exculpatory or relevant impeachment evidence that exists in

---

[12] *United States v. Landerman*, 109 F.3d 1053, 1062 (5th Cir. 1997), opinion modified on reh'g, 116 F.3d 119 (5th Cir. 1997) citing *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974).
[13] *Id.* at 1063.
[14] *Id.* citing *United States v. Mizell*, 88 F.3d 288, 293 (5th Cir.), cert. denied, 519 U.S. 1046 (1996); *see also U.S. v. Robinson*, 530 F.2d 1076, 1079 (D.C. Cir. 1976) ("The dominant principle is that evidence showing the 'emotional partiality' of a witness 'is always significant in assessing credibility,' for 'the trier must be sufficiently informed of the underlying relationships, circumstances and influences operating on the witness so that, in light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction.'"); *State v. Mills*, 259 So. 3d 1045, 1047 (La. App. 1 Cir. 2018) ("A witness's hope or knowledge he will receive leniency from the state is highly relevant to establish bias or interest, as is the possibility the prosecution may have some leverage over a witness due to pending criminal charges or a plea agreement. "[a] witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct."); *State v. Vale*, 95-1230, p. 4 (La. 1/26/96), 666 So. 2d 1070, 1072; *State v. Rankin*, 465 So. 2d 679, 681 (La. 1985) ("The possibility that the prosecution may have leverage over a witness due to that witness'[s] pending criminal charges is recognized as a valid area of cross-examination."); *United States v. Purkey*, 428 F.3d 738, 757 (8th Cir. 2005) ("[E]vidence of additional criminal conduct covered by a non-prosecution agreement is relevant to show bias of the witness . . . .").
[15] *United States v. Mizell*, 88 F.3d 288, 292 (5th Cir. 1996).
[16] *Id.*

the Domingue case file and/or recorded conversations between Domingue and the CI or from Domingue to others. Absent these materials, the full extent of Scott's right to confrontation and impeachment will be infringed.

### III.    Conclusion

Scott is re-urging his Motion to Compel the disclosure of the materials related to the Texas investigation into Domingue because of the newly produced emails between the Government's prosecution team and Domingue's counsel. Domingue is a critical witness in the upcoming trial on the second set of counts against Scott who will be called by the Government in its case. Scott is entitled to confront and impeach his accuser and all other protections afforded by Rule 16, *Brady*, *Giglio*, and *Jencks*.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

*/s/ Kerry Miller*
**KERRY J. MILLER (#24562), T.A.**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:    (504) 556-5549
Facsimile:     (504) 310-0275
Email: kmiller@fishmanhaygood.com

AND

**MILLS & AYMOND LLP**

**ALYSSON L. MILLS (#30492)**
**KRISTEN D. AMOND (#37011)**
650 Poydras Street, Suite 1525
New Orleans, LA 70130
Telephone:    (504) 383-0332
Facsimile:     (504) 383-0332
Email:           amills@millsamond.com
                    kamond@millsamond.com

*CJA Counsel for Defendant, Chad Scott*

14

15

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record on May 4, 2021.

                                             */s/ Kerry Miller*
                                             **KERRY J. MILLER**